**PUBLISH**

**UNITED STATES COURT OF APPEALS**

Filed 7/16/96

**TENTH CIRCUIT**

---

GREGORY G. URBAN, by Ronald
and Janice Urban,

        Plaintiff - Appellant,

    v.

JEFFERSON COUNTY SCHOOL
DISTRICT R-1,

        Defendant - Appellee.

No. 95-1111

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D. Ct. No. 93-S-908)**

---

William R. Baesman, Littleton, Colorado (Kevin M. Baird, Gorsuch, Kirgis, L.L.C., Denver, Colorado, with him on the briefs), appearing for the Plaintiff-Appellant.

Alan J. Canner (Gerald A. Caplan, Alexander Halpern, and Susan S. Schermerhorn, with him on the brief), Caplan & Earnest, Boulder, Colorado, for the Defendant-Appellee.

---

Before TACHA, MCKAY, and JONES,* Circuit Judges.

---

TACHA, Circuit Judge.

---

   *The Honorable Nathaniel R. Jones, Senior Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation.

Gregory Urban ("Gregory") has multiple disabilities that include severe retardation and delays in speech and motor skills. Jefferson County School District ("the District") refused to place him at the high school of his choice. By and through his parents Ronald and Janice Urban, Gregory brought this action for injunctive relief pursuant to the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400-1485, the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-12213, section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and 42 U.S.C. § 1983. The district court dismissed two of Gregory's eight claims for failure to exhaust administrative remedies, granted summary judgment in favor of the District on the remaining claims, and denied Gregory's request for attorney's fees. Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm.

## I. BACKGROUND

The IDEA provides federal money to state and local agencies for the education of disabled children. The Act guarantees all disabled children between the ages of three and twenty-one access to "a free appropriate public education which emphasizes special education and related services designed to meet their unique needs . . . ." 20 U.S.C. § 1400(c). It also creates an "obligation to educate disabled children in the 'least restrictive environment' in which they can receive an appropriate education." Murray v. Montrose County Sch. Dist. RE-1J, 51 F.3d 921,

926 (10th Cir.) (citing 20 U.S.C. § 1412(5)(B)), <u>cert. denied</u>, 116 S. Ct. 278 (1995). In order to implement these goals, the IDEA requires the state to provide each disabled child with an individualized education program (IEP). An IEP is a written statement of (1) the child's present performance level, (2) the goals and instructional objectives to be attained, (3) the specific educational services to be provided, (4) the child's needed transition services, (5) the projected dates for initiation and completion of such services, and (6) the criteria and procedures to be used to assess progress toward the instructional objectives. 20 U.S.C. §§ 1414(a)(5), 1401(a)(20). The part of the IEP at issue in this case is the statement of transition services-- activities that help the student move from school to a post-school environment. 20 U.S.C. § 1401(a)(19).

The IDEA places special emphasis on parental participation in the development of the IEP, requiring written parental notification of any change of or refusal to change the "identification, evaluation, or educational placement of the child or the provision of a free appropriate public education to the child . . . ." 20 U.S.C. § 1415(b)(1)(C). Parents are also entitled to bring a complaint on any matter relating to the evaluation or placement of their child and to seek an impartial due process hearing after bringing a complaint. 20 U.S.C. § 1415(b)(2).

Gregory and his family moved to Evergreen, Colorado in November 1991, just before Gregory turned eighteen years old. School district officials placed Gregory

in Golden High School and scheduled a special education conference to develop his IEP. Gregory's parents consented to this placement believing that it would last only until the end of the school year. Gregory attended Golden High School, however, until he was twenty-one, the age at which he became ineligible for services under the IDEA. Had he not been disabled, Gregory would have attended Evergreen High School.

At Golden High School, Gregory participated in the Challenge Program and P.E. Plus. The Challenge Program was designed to provide education and support services to children with severe disabilities. As part of the program, Gregory participated in job site training known as "shadowing," in which he performed light cleaning at a Pizza Hut in Golden and delivered newspapers for the Golden Transcript. P.E. Plus was an adaptive physical education program. Neither the Challenge Program nor P.E. Plus was available at Gregory's neighborhood high school in Evergreen.

School officials held the initial conference to develop Gregory's IEP on February 14, 1992. Gregory's IEP recommended that the Challenge Program at Golden High School would constitute placement in the least restrictive environment for him. Gregory's parents were not present at the conference because they could not take time off from work. They subsequently sought a hearing before an Impartial Hearing Officer (IHO), arguing that the District violated Gregory's right to a free

appropriate public education by (1) assigning Gregory to a school other than the one which he would have attended had he not been disabled and (2) failing to assess Gregory's need for, make IEP provision for, and provide transition services. The parties resolved other matters by stipulation prior to the hearing.

The IHO determined that the District failed to provide Gregory with a free appropriate public education because his IEP had not provided a statement of transition services. Consequently, the IHO ordered the IEP team to reconvene and create a new IEP that provided for transition services. The IHO found that Gregory had a limited ability to generalize, in that he could not readily transfer skills from the environment in which he learned them to other similar environments. Based on this finding, the IHO decided that the statement of transition services in the new IEP must be "predicated" on Gregory's limited ability to generalize, and that such transition services must include experiences in his post-school environment in Evergreen, rather than in Golden. The IHO further decided that Gregory should be placed in the Challenge Program only after consideration of all available options in Evergreen and only if the IEP required such a placement. However, the IHO did find that aside from the lack of a statement of transition services and without reference to the least restrictive environment question, Gregory was receiving an appropriate education in the Challenge Program, and that the program provided Gregory with educational benefit. The IHO did not decide whether Gregory's least restrictive

environment was at Evergreen High School or Golden High School because such a determination could only be made by reference to a complete IEP. Finally, the IHO found that Gregory's parents had not given their informed consent to the IEP because they were not present when school officials met to create it. The IHO directed the District to schedule the meetings to create a new IEP at times when Gregory's parents could attend.

The District appealed several aspects of the IHO's decision to an Administrative Law Judge (ALJ), as permitted by 20 U.S.C. § 1415(c). The District did not appeal the IHO's order to create a new IEP. Gregory's parents cross-appealed, requesting that the ALJ require the District to place Gregory at Evergreen High School. The ALJ deferred to the IHO's findings of fact, and made additional findings after hearing evidence. Like the IHO, the ALJ ordered school officials to reconvene a new IEP meeting. The ALJ rejected the argument that Gregory was entitled to placement at Evergreen High School as a matter of law. The ALJ noted, however, that the District should consider whether services available in Evergreen could be used for Gregory's IEP, and should specifically identify Gregory's post-school environment when determining Gregory's need for transition services. The ALJ also affirmed the IHO's conclusion that the District must hold new IEP meetings at times that accommodated Gregory's parents' work schedules. The ALJ held that the IHO erred when she concluded that transition services must be focused on

Evergreen, because such determinations are properly made by the IEP committee. The ALJ also held that the IHO erred when she decided that Gregory's transition services must be "predicated" on his limited ability to generalize, to the extent that "predicate" implies the sole basis for the transition services, because such a directive is beyond the authority of administrative review.

Pursuant to the ALJ's order, the District convened a number of meetings, in which Gregory's parents participated, to develop a new IEP for Gregory. This new IEP, completed on May 4, 1993, again assigned Gregory to the Challenge Program at Golden High School. Prior to that date, on April 27, 1993, Gregory filed this action in the district court. The district court denied Gregory's motion for a preliminary injunction that would have required the District to place Gregory in Evergreen High School. The court granted the District's motion to dismiss Gregory's sixth and eighth claims for lack of subject matter jurisdiction due to Gregory's failure to exhaust administrative remedies.

The District then moved for summary judgment on the remaining claims. Gregory moved for summary judgment on his seventh claim and requested attorney's fees. The district court granted summary judgment to the District, denied Gregory's motion, and denied Gregory's request for attorneys fees. Urban v. Jefferson County Sch. Dist. R-1, 870 F. Supp. 1558 (D. Colo. 1994). In its summary judgment order, the court concluded that Gregory was receiving a free appropriate public education

at Golden High School, and noted that Gregory has no right, as a matter of law, to placement at his neighborhood school under either the IDEA or the Rehabilitation Act. Id. at 1567-68. The court further held that the ADA does not give Gregory the right to reject the placement selected by school officials. Id. at 1569. Finally, because the court found no violation of Gregory's statutory rights, it rejected Gregory's § 1983 claim. Id. This appeal followed.

## II. DISCUSSION

Gregory raises four issues on appeal. First, he argues that the district court erred when it held that it lacked subject matter jurisdiction over his sixth and eighth claims. Second, Gregory contends that he is entitled to compensatory services for the seventeen months he was deprived of an IEP with a statement of transition services. Third, he argues that the district court erred by granting summary judgment to the District on his ADA claim. Finally, Gregory contends that he was the prevailing party under the ALJ's decision and, consequently, that he is entitled to attorney's fees.

A.     Failure to exhaust administrative remedies

We review the district court's decision to dismiss claims six and eight for lack of subject matter jurisdiction de novo. Fostvedt v. United States, 978 F.2d 1201, 1202 (10th Cir. 1992), cert. denied, 507 U.S. 988 (1993). Under the IDEA, most plaintiffs must exhaust the administrative remedies provided in 20 U.S.C. §§

1415(b)(2) and 1415(c) in order to receive judicial review. 20 U.S.C. § 1415(e)(2); Honig v. Doe, 484 U.S. 305, 326-27 (1988); Association for Community Living in Colorado v. Romer, 992 F.2d 1040, 1043 (10th Cir. 1993). The purpose of the exhaustion rule is to permit agencies to exercise discretion and apply their expertise, to allow the complete development of the record before judicial review, to prevent parties from circumventing the procedures established by Congress, and to avoid unnecessary judicial decisions by giving the agency an opportunity to correct errors. Ass'n for Community Living, 992 F.2d at 1044. Exhaustion is not required, however, when administrative remedies would be futile, when they would fail to provide relief, or when "an agency has adopted a policy or pursued a practice of generally applicability that is contrary to the law." Id. (quoting H.R. Rep. No. 296, 99th Cong., 1st Sess. at 7 (1985)). Unless this case falls within one of the three exceptions, Gregory is not entitled to judicial review of his sixth and eighth claims absent exhaustion of his administrative remedies.

Pursuant to the ALJ's order, the District created a second IEP. Gregory's sixth and eighth claims for relief stated objections to the procedures utilized and the result reached in the second IEP. The sixth claim alleged that the District violated the IDEA's procedural requirements by preventing Gregory's parents from participating in the IEP meetings and by placing Gregory at Golden High School without considering a placement at Evergreen High School. The eighth claim alleged that the

District denied Gregory a free appropriate public education. Because Gregory had not pursued any administrative remedies with regard to the second IEP, the district court had no administrative record, and thus no factual basis, for review. Accordingly, the court dismissed the sixth and eighth claims for failure to exhaust administrative remedies.

Gregory argues that he should not be required to exhaust his administrative remedies because his complaints regarding the second IEP are the same as those raised in the administrative proceedings concerning the first IEP. Nothing in the IDEA, however, states that a plaintiff need not exhaust administrative remedies if his objection to a second IEP is the same as his objection to his first IEP. Even if Gregory was dissatisfied with the second IEP for the same reason that he had been dissatisfied with the first, he still had an obligation to pursue administrative remedies. 20 U.S.C. § 1415(e)(2). The district court would then have had the complete administrative record it needed to review his allegations.

Furthermore, Gregory's claims do not satisfy any of the three exceptions to the exhaustion requirement. Administrative relief would not have been futile or inadequate. Administrative remedies are generally futile or inadequate when plaintiffs allege "structural or systemic failure and seek systemwide reforms." Ass'n for Community Living, 992 F.2d at 1044. Gregory's claims do not allege such systemic violations--his claims are directed solely at the creation of his IEP, and the

IDEA specifically leaves the initial determinations of such claims to administrative decisionmakers. 20 U.S.C. §§ 1415(b)(2), 1415(c), 1415(e)(2). To fall into the third exception, the District must have adopted a policy of general applicability contrary to law which "thereby renders agency expertise and the factual development of an administrative record less important." Ass'n for Community Living, 922 F.2d at 1044. Gregory's allegations raise factual questions about the meetings in which the District created the second IEP. The district court simply cannot review this matter without a complete administrative record. We conclude that the district court correctly dismissed the sixth and eighth claims for lack of jurisdiction. To hold otherwise would be contrary to the explicit language of the statute and would undermine the purposes of the exhaustion requirement.

B.     Compensatory Services

Under the IDEA, disabled children such as Gregory are entitled to a free appropriate public education. 20 U.S.C. § 1400(c). Gregory claims that the District deprived him of an appropriate education for seventeen months by failing to provide an IEP containing a statement of transition services. He further claims that he is entitled to compensatory education as a remedy. In this case we need only determine whether Gregory was deprived of an appropriate education. Because we conclude that no such deprivation occurred, we need not reach the issue of whether compensatory services are an available remedy for such a violation.

The IHO, the ALJ, and the district court all rendered decisions on the question of whether Gregory received an appropriate education. The IHO's decision is ambiguous. She found that the District failed to provide Gregory with a free appropriate public education by failing to provide an IEP with an explicit statement of transition services. She also found, however, that aside from the lack of transition services and without reference to the least restrictive environment question, Gregory did receive an appropriate education and received educational benefits in the Challenge Program at Golden High School. The IHO remanded the case for creation of a new IEP to remedy the lack of a statement of transition services.

On appeal, Gregory argued that as a matter of law he should be placed at Evergreen High School. The ALJ rejected this argument on the grounds that nothing in the statute requires a neighborhood placement and that decisions regarding appropriate placements are properly left to school officials. The ALJ agreed with the IHO that except for the lack of a statement of transition services, Gregory received an appropriate education at Golden High School. The ALJ also stated that the appropriate remedy for the omission of a statement of transition services, which he described as a "procedural defect," was remand for completion of the IEP.

The district court received the record of the IHO and ALJ proceedings as required by 20 U.S.C. § 1415(e)(2). After reviewing the record, the district court affirmed the decisions of the ALJ regarding the District's compliance with the IDEA.

The district court held that Gregory did receive a free appropriate public education, that the failure to provide a statement of transition services was a "procedural defect and the appropriate remedy was to remand for completion of the IEP," Urban, 870 F. Supp. at 1567, and that although it may be proper for certain transitional services to be provided in Evergreen, it "does not necessarily follow that he must attend high school in Evergreen," id. The district court also held that the IDEA requirement that disabled children be educated in the least restrictive environment did not give Gregory a right as a matter of law to attend Evergreen High School. Id. at 1568. Thus, the district court granted the District's motion for summary judgment.

We review the district court's grant of summary judgment de novo. Murray, 51 F.3d at 928. In Board of Education v. Rowley, 458 U.S. 176 (1982), the Supreme Court outlined the approach that courts should take in reviewing administrative decisions under the IDEA. We begin our review by asking whether the State complied with IDEA procedures, including whether the IEP conformed with the requirements of the Act. Id. at 206 & n.27. We then determine whether the IEP was reasonably calculated to enable Gregory to receive educational benefits. Id. at 206.

Gregory's IEP lacked an explicit statement of transition services: it did not designate a specific outcome for Gregory when he reached the age of twenty-one and it did not contain a specific set of activities for meeting that outcome. As determined by the ALJ, Gregory's IEP was deficient under the IDEA. This deficiency, however,

- 13 -

did not amount to a denial of an appropriate education. Although the IEP did not contain a specific statement of transition services, Gregory was not denied such services: the IEP contained language which addressed Gregory's transitional needs, such as community awareness, daily living skills, and the ability to pay for purchases. In addition, these services were focused on teaching Gregory to generalize and transfer skills from one environment to another.

It is important to distinguish between the statement of transition services in the IEP and the provision of transition services. The IHO and the ALJ both found that Gregory received and benefitted from transition services in the Challenge Program at Golden High School. After reviewing the administrative record, the district court found that Gregory received an appropriate education at Golden High School, and there is substantial evidence in the record to support this conclusion. Furthermore, aside from the absence of a specific statement of transition services, the IEP completely complied with the requirements of the Act: it contained a statement of Gregory's present levels of achievement, a statement of annual goals, a statement of specific services that the District would provide (and most of these services were geared towards helping Gregory move from school to a post-school environment), a statement of the projected dates of such services, and a statement of criteria and procedures for determining whether Gregory was achieving his goals. Technical deviations from the requirements of section 1401(a)(20), such as the

failure to include a statement of transition services, do not render an IEP entirely invalid; to hold otherwise would "exalt form over substance." Doe v. Defendant I, 898 F.2d 1186, 1190 (6th Cir. 1990); see also Thomas v. Cincinnati Bd. of Educ., 918 F.2d 618, 625 (6th Cir. 1990) (stating that defendant's failure to provide parent with written notice of new IEP meeting was error of "technical noncompliance which did not result in any substantial deprivation"); Burke County Bd. of Educ. v. Denton, 895 F.2d 973, 982 (4th Cir. 1990) (refusing to award compensatory education when "the procedural faults committed by the Board . . . did not cause [the child] to lose any educational opportunity").

Gregory's IEP was reasonably calculated to enable him to receive educational benefits. In the context of a severely disabled child such as Gregory, "the 'benefit' conferred by the [IDEA] and interpreted by Rowley must be more than de minimis." Polk v. Central Susquehanna Intermediate Unit 16, 853 F.2d 171, 182 (3d Cir. 1988), cert. denied, 488 U.S. 1030 (1989); see also Johnson v. Independent Sch. Dist. No. 4, 921 F.2d 1022, 1025-26 (10th Cir. 1990) ("[T]he 'appropriate' education required by the Act is not one which is guaranteed to maximize the child's potential."), cert. denied, 500 U.S. 905 (1991). The record supports the determination of both the IHO and ALJ that Gregory benefitted from the Challenge program at Golden High School and received an appropriate education. Therefore the district court did not err in finding that the District provided Gregory with a free appropriate public education.

Gregory has never challenged the quality of the transition services he received. He bases his appeal solely on the ground that he was denied transition services in a specific location--his neighborhood school in Evergreen. As we held in Murray, the IDEA does not give him a right to a placement at a neighborhood school. 51 F.3d at 928-30 (citing with approval the district court opinion in this case for the proposition that "the statutory preference for placement at a neighborhood school is only that--and it does not amount to a mandate"). The IDEA only entitles Gregory to an appropriate education, and the state "satisfies this requirement by providing personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction." Rowley, 458 U.S. at 203. Gregory received and benefitted from such personalized instruction. The IDEA does not entitle him to more.

Our holding that the district court did not err in finding that Gregory received an appropriate education is not meant to suggest that school districts need not comply with statutory requirements regarding the contents of an IEP. The lack of an explicit statement of transition services certainly entitled Gregory to a new IEP. Because the District's procedural violation did not amount to a substantive deprivation, however, there was no violation of Gregory's right to an  appropriate education. In the absence of a violation of his right to an appropriate education, Gregory is not entitled to compensatory education. Thus we do not reach the issue of whether compensatory

services are available under the IDEA.

C.    ADA Claims

Gregory argues that the District violated his rights under the ADA by refusing to place him at Evergreen High School.  He maintains that the ADA requires the District to make whatever "reasonable modifications" are necessary to accommodate Gregory at his neighborhood school and allows him to reject the placement assigned to him by the District.  The district court granted summary judgment in favor of the District on these claims.  <u>Urban</u>, 870 F. Supp. at 1569-70.

We review the district court's grant of summary judgment on these claims de novo.  <u>Murray</u>, 51 F.3d at 928.  Title II of the ADA states that  "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  Regulations promulgated under the ADA forbid public entities such as the District from denying a disabled person "the opportunity to participate in services, programs, or activities that are not separate or different, despite the existence of permissibly separate or different programs or activities."  28 C.F.R. § 35.130(b)(2).  The regulations require public entities to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the

modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7).

Title II of the ADA adopts the substantive standards of section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. Office of Civil Rights Policy Letter, 20 IDELR 134, 135 (Oct. 7, 1993); see also 34 C.F.R. § 35.103(a) ("Except as otherwise provided in this part, this part shall not be construed to apply a lesser standard than the standards applied under title V of the Rehabilitation Act of 1973 . . . or the regulations issued by Federal agencies pursuant to that title."). The regulations promulgated under section 504 generally conform to the standards established by the IDEA, 34 C.F.R. pt 104, App. A 373, and use substantially the same language regarding a school district's obligation to evaluate each disabled child, create an IEP with parental input, and provide each disabled child with an appropriate education. See 34 C.F.R. §§ 104.33, 104.35, 104.36. Thus we analyze Gregory's ADA claim by reference to section 504's standards, and Gregory's claim is valid only if he is entitled to a placement at Evergreen High School under section 504.

In Southeastern Community College v. Davis, 442 U.S. 397, 410-11 (1979), the Supreme Court held that section 504 does not require affirmative action to accommodate the disabled. In addition, courts in other circuits have held that section 504 does not require school districts to modify school programs in order to ensure

neighborhood placements.  See, e.g., Barnett v. Fairfax County Sch. Bd., 927 F.2d 146, 154-55 (4th Cir.) (holding that school district need not provide services at neighborhood school when such services are available at another central location), cert. denied, 502 U.S. 859 (1991); Schuldt v. Mankato Indep. Sch., 937 F.2d 1357, 1362-63 (8th Cir. 1991) (rejecting argument that Tenth Circuit's holding in New Mexico Ass'n for Retarded Citizens v. New Mexico, 678 F.2d 847, 855 (1982), requires school districts to modify schools to accommodate disabled children already receiving an appropriate public education), cert. denied, 502 U.S. 1059 (1992).

Relying on the similarity between the substantive and procedural frameworks of the IDEA and section 504, see 34 C.F.R. § 300.340 et seq., 34 C.F.R. § 104.31 et seq., we conclude that if a disabled child is not entitled to a neighborhood placement under the IDEA, he is not entitled to such a placement under section 504.  See Smith v. Robinson, 468 U.S. 992, 1017 (1984) (noting that the IDEA and section 504 "are built around fundamental notions of equal access to state programs and facilities" and thus "their substantive requirements . . . have been interpreted to be strikingly similar"); D.F. v. Western Sch. Corp., 921 F. Supp. 559, 573-74 (S.D. Ind. 1996) (holding that when plaintiff fails to prove IEP violated the IDEA, claims based on ADA and Rehabilitation Act must also fail).

Our decision in New Mexico Association for Retarded Citizens does not change this result.  In that case, we noted that "modifications of existing programs

may be required where the financial burden would not be excessive and the accommodation would enable handicapped children to realize the benefits of the State's educational program." 678 F.2d at 855. We also stated that a federally-funded education system may violate section 504 when the school system's practices "preclude the handicapped from obtaining system benefits realized by the non-handicapped." Id. at 853 (emphasis added). Thus section 504 requires accommodation in a neighborhood school when disabled children cannot receive educational benefits without accommodation; it does not require a school district to modify its program in order to accommodate a single child in a neighborhood school, especially if that child is already receiving educational benefits in another environment. In light of the Supreme Court's holding in Davis that section 504 does not require affirmative action to accommodate the disabled, and our holding in Murray that a disabled child does not have a right to attend her neighborhood school, we conclude that the ADA does not entitle Gregory to attend his neighborhood school.

D. Attorney's Fees

We review the refusal to award attorney's fees for abuse of discretion. Corneveaux v. CUNA Mutual Ins. Group, 76 F.3d 1498, 1505 (10th Cir 1996). Section 1415(e)(4)(B) of the IDEA allows district courts to award attorney's fees "to the parents or guardian of a handicapped child or youth who is the prevailing party."

Congress intended the term "prevailing party" to mean the same under § 1415(e)(4)(B) as it does under 42 U.S.C. § 1988. Beard v. Teska, 31 F.3d 942, 950 (10th Cir. 1994). Under § 1988, "a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." Farrar v. Hobby, 113 S. Ct. 566, 573 (1992).

Gregory contends that he was the prevailing party in the administrative proceedings. Gregory's complaint before the IHO stated that the District violated his right to a free appropriate public education by (1) not placing him at Evergreen High School, (2) failing to assess his need for an extended school year, and (3) failing to make IEP provision for transition services. Prior to the IHO hearing, the District agreed to reconvene an IEP meeting to consider Gregory's need for an extended school year. In addition, the IHO and ALJ both remanded the case for creation of a new IEP containing an explicit statement of transition services. Thus Gregory prevailed as to these two issues: he received the relief he sought and that relief materially altered the relationship between the District and him.

Our determination that Gregory was the prevailing party in the administrative proceedings, however, does not end our inquiry. An award of attorney's fees must also be reasonable. Id. at 574-75. Whether an award of attorney's fees is reasonable depends, in part, upon the degree of success obtained by the plaintiff. Hensley v.

Eckerhart, 461 U.S. 424, 436 (1983). Indeed, there are circumstances in which a plaintiff who formally prevails "should receive no attorney's fees at all." Farrar, 113 S. Ct. at 575. In this case, Gregory also sought a placement at Evergreen High School, but he was never awarded such a placement. Although Gregory was a prevailing party in that he received relief on some of his claims, we cannot say that he succeeded to the degree necessary to warrant an award of attorney's fees. Thus, we conclude that the district court did not abuse its discretion when it denied Gregory's request for attorney's fees.

E.    Conclusion

The district court correctly dismissed Gregory's sixth and eighth claims for lack of subject matter jurisdiction. In addition the district court did not err in granting summary judgment on Gregory's claim for compensatory education and his ADA claim. Finally, the district court did not abuse its discretion when it denied Gregory's request for attorneys fees. Accordingly the judgment of the district court is AFFIRMED.