F I L E D
United States Court of Appeals
Tenth Circuit

JUL 16 1998

PATRICK FISHER
Clerk

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

KENNETH LOGUE and GRETCHEN
LOGUE, parents and legal guardians of
Noah Logue, a minor,

      Plaintiffs - Appellants,

v.

UNIFIED SCHOOL DISTRICT NO. 512,
SHAWNEE MISSION,

      Defendant - Appellee.

Nos. 97-3087
97-3112

(D.C. No. 96-2218-KHV)

(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **PORFILIO**, **McKAY**, and **TACHA**, Circuit Judges.

---

Plaintiffs-Appellants Kenneth and Gretchen Logue, as parents and legal guardians

of Noah Logue, appeal the district court's determination that Defendant-Appellee, the

Unified School District Number 512, Shawnee Mission [the District], offered their son,

Noah, a free and appropriate public education as required by the Individuals with

Disabilities Education Act [IDEA].  See 20 U.S.C. §§ 1400-1485.

Noah Logue is a young boy who is hearing impaired.  Noah's hearing impairment

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel.  The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

entitles him and his parents to the protections of the IDEA. See id. § 1401(a)(1)(A)(i).

The IDEA provides federal funds to the states for the education of children with

disabilities. In order to receive these funds, the states must have in effect a policy which

"assures all children with disabilities the right to a free appropriate public education." Id.

§ 1412(1). What constitutes a free appropriate public education [FAPE] is determined on

a case-by-case basis, pursuant to procedures established by the IDEA. See id. §§

1401(18) & 1414(a)(5); Board of Educ. v. Rowley, 458 U.S. 176, 181-82 (1982). A

student's unique needs in obtaining a FAPE and the services required to meet those needs

are prescribed by an individualized education program [IEP]. See 20 U.S.C. § 1401(20).

An IEP is a written statement developed in a meeting attended by the student's teacher, a

district special education professional, and the student's parents. See id. The IEP

summarizes the student's abilities, outlines goals for the student's education, specifies the

services the student will receive to achieve those goals, and establishes criteria to evaluate

the student's progress. See id. §§ 1401(20)(F) & 1414(a)(5).

Noah began attending the District's total communication preschool in October of

1991. The total communication method of teaching the hearing impaired utilizes both the

use of sign language and verbal speech and emphasizes the student's comprehension of

communication and academic achievement. Noah made progress in the District's

preschool. See R., Vol. VII at Ex. 69. Despite this progress, in the summer of 1994 the

Logues investigated the option of placing Noah at the Central Institute for the Deaf

[CID]. The CID is a school which utilizes the oral communication method for teaching the hearing impaired. The primary goal of the oral communication method is to develop spoken language skills. This method does not allow the use of sign language during instruction but instead focuses on a student's verbal and lip reading abilities. The CID evaluated Noah's communication skills and academic ability and concluded that an oral communication classroom was appropriate for him if his parents' goal was developing spoken language as Noah's primary means of communication. The Logues informed the District's Director of Special Education of their desire that Noah's future instruction be conducted by the oral communication method.

The District addressed the Logues' desire to change Noah's instruction method at Noah's three-year IEP reevaluation meeting held in August 1994. The Logues, a psychologist, Noah's speech and language pathologist, Noah's audiologist, the District Director of Special Education, the principals of Noah's home school and the school he attended, and a learning specialist all attended the meeting. At this meeting the District offered a total communication IEP for Noah which was not acceptable to the Logues. Although the Logues and the District agreed to further negotiations concerning the IEP, in the meantime the Logues enrolled Noah at the CID at their own expense. A second IEP meeting in September 1994 did not result in an IEP which was acceptable to the Logues. They then requested a due process hearing on the acceptability of the IEP as provided for in the IDEA. See 20 U.S.C. § 1415(b)(2). After an extensive hearing in

1995, a hearing officer determined that Noah's parents were not entitled to relief. The parents appealed the hearing officer's decision to a state administrative review officer who affirmed the hearing officer's opinion. They then filed a complaint and a request for review under 20 U.S.C. § 1415(e)(2) in the district court. The District filed a motion for summary judgment or, in the alternative, for judgment on the record. The district court granted this motion, see Logue v. Shawnee Mission Pub. Sch. Unified Sch. Dist. No. 512, 959 F. Supp. 1338, 1351 (D. Kan. 1997), and also denied the Logues' subsequent Motion for Relief from Judgment.

Noah and his parents appeal the district court's decision affirming the hearing officer's and reviewing officer's determinations that the District provided Noah with a FAPE which met the requirements of the IDEA. They contend that the District's proposed IEP for Noah was not within IDEA standards. Additionally, they assert that Kansas has set a higher standard for the educational benefit which must be provided to a disabled student than that adopted by the Supreme Court in Rowley. They also argue that the district court erred in refusing to allow them to introduce evidence into the case at the district court level which was not presented to the state hearing officer.

We review a district court's grant of summary judgment or judgment on the record de novo, utilizing the same legal analysis applied by the district court. See Murray v. Montrose County Sch. Dist. RE-1J, 51 F.3d 921, 927-28 (10th Cir.), cert. denied, 516 U.S. 909 (1995); Mason v. Oklahoma Turnpike Auth., 115 F.3d 1442, 1450 (10th Cir.

1997).  When reviewing a decision regarding the IDEA, we modify this standard by giving due weight to the administrative proceedings and by avoiding the temptation to substitute our notions of sound educational policy for that of school authorities.  See O'Toole v. Olathe Dist. Schs. Unified Sch. Dist. No. 233, No. 97-3125, 1998 WL 251193, at *5 (10th Cir. May 19, 1998); Murray, 51 F.3d at 927.  When reviewing the adequacy of an IEP, a court must first determine whether the school district "complied with the IDEA's procedural requirements, including whether the IEP conformed with the substantive requirements of the act."  O'Toole, 1998 WL 251193, at *7 (quoting Urban v. Jefferson County Sch. Dist. R-1, 89 F.3d 720, 726 (10th Cir. 1996)).  We then examine "whether the IEP was reasonably calculated to enable [the student] to receive educational benefits."  Urban, 89 F.3d at 726.  The burden of proof rests with the party attacking the IEP.  See Johnson v. Independent Sch. Dist. No. 4, 921 F.2d 1022, 1026 (10th Cir. 1990), cert. denied, 500 U.S. 905 (1991).

The Logues contend that the District did not adhere to various formal and procedural requirements in its development of Noah's IEP, asserting, *inter alia*, that they were not accorded meaningful involvement and input.  The IDEA requires state educational agencies to allow parents an opportunity to examine all records relevant to their child's educational placement and to "obtain an independent educational evaluation of the child."  20 U.S.C. § 1415(b)(1)(A).  The school district must provide the parents with prior written notice of any refusal to initiate or change the provisions of a child's

-5-

FAPE.  See id. § 1415(b)(1)(C).  The IDEA also requires the educational agency to provide "an opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a [FAPE] to such child."  Id. § 1415(b)(1)(E).

We conclude that the District met the procedural requirements of the IDEA in developing Noah's IEP.  The District provided the Logues with proper notice of Noah's regular IEP hearings and even arranged to hold his three-year evaluation early, in August 1994 rather than September 1994, in order to accommodate the parents.  The District also provided them with informative evaluations of Noah's communication and academic skills and achievements which were generated by various sources.  Additionally, the District revised the August IEP to address the Logues' concerns.  The District responded to the Logues' desire to have Noah taught by the oral communication method, although it ultimately determined that placement at the CID was not the "least restrictive" option to provide Noah with a FAPE.  See Murray, 51 F.3d at 926 ("Among the most important substantive requirements of the IDEA is the obligation to educate disabled children in the 'least restrictive environment' in which they can receive an appropriate education."); see also 20 U.S.C. § 1412(5)(B).  Furthermore, any deficiency in the IEP process must result in prejudice to the student or his parents before a court may find that the IDEA was violated.  See O'Toole, 1998 WL 251193, at *7 (noting that "technical deviations" from the IDEA's requirements do not "render an IEP entirely invalid"); Urban, 89 F.3d at 726

(holding that a deficient IEP "did not amount to a denial of an appropriate education"); accord Roland M. v. Concord Sch. Comm., 910 F.2d 983, 994 (1st Cir. 1990) (stating that "procedural flaws do not automatically render an IEP legally defective"), cert. denied, 499 U.S. 912 (1991).  The Logues have not demonstrated that they were prejudiced by any alleged procedural deficiencies in the IEP process.

We next determine whether the IEP met the standards established by the IDEA. The Logues and the District disagree about the level of educational benefit to which Noah is entitled.  The Logues assert that Kansas statutes mandate that its schools provide each disabled student with an IEP that maximizes the child's potential.  Specifically, they argue that Kansas Statutes Annotated § 72-962 requires the District to provide an IEP for Noah that is "'in accordance with [his] abilities.'"  Appellant's Br. at 25.  The Logues contend that this language manifests a legislative intent to set a higher standard than that stated in Rowley, i.e., a "maximum benefit" standard rather than the "some benefit" standard.  In Rowley, the Supreme Court held that the IDEA requires schools to provide "services which are individually designed to provide educational benefit to the handicapped child."  Rowley, 458 U.S. at 201.  The Court stated, however, that a state need not provide an IEP which maximizes each child's potential.  See id. at 198.  We resolved this specific issue in O'Toole, 1998 WL 251193, at *6-*7, which was decided after this case was filed.  In O'Toole we held that neither the language of the cited statute nor its amendments and related regulations indicate that the Kansas legislature intended to

adopt an educational standard higher than the one established by <u>Rowley</u>. <u>See id.</u> at *7. Because we are bound by precedent contrary to the Logues' assertions, we affirm the conclusion that the District was not required to provide Noah with an IEP that exceeded the <u>Rowley</u> standard.

The Logues also contend that the District's proposed IEP for Noah was inadequate under both state standards and IDEA standards because it lacked a sufficient description of his present levels of performance; it did not contain measurable short-term objectives or objective criteria for measuring his success; and it was not reasonably calculated to provide some educational benefit. We conclude that the IEP sufficiently described Noah's then-present levels of performance. The IEP also contained specific notations on Noah's academic achievement and the severity rating of his speech and language skills. It included the results of several tests given to Noah by the District and also incorporated the results of the CID's tests. Additionally, the IEP articulated specific short-term objectives for Noah and described objective criteria for measuring his success. For example, one of the objectives states that "Noah will produce verbs and prepositions at the sentence level in response to pictures with no clinician prompts with 90% accuracy over 2 consecutive sessions." R., Vol. VI, Ex. 27.

We also conclude that the IEP was calculated to provide educational benefit to Noah. The District's IEP provided for instruction in a self-contained hearing impaired classroom; "mainstreamed" time in a regular classroom for academic subjects, physical

education, and music; and extended time for speech, language, and auditory training. See id.; cf. Lachman v. Illinois State Bd. of Educ., 852 F.2d 290, 296-97 (7th Cir.) (holding that an IEP providing for education in a total communication program provided the student with a FAPE), cert. denied, 488 U.S. 925 (1988). Although the Rowley standard requires more than a de minimus benefit to the student, see Oberti v. Board of Educ., 995 F.2d 1204, 1213 (3d Cir. 1993); Doe v. Smith, 879 F.2d 1340, 1341 (6th Cir. 1989), cert. denied sub nom. Doe v. Sumner County Bd. of Educ., 493 U.S. 1025 (1990), if a student progresses in a school district's program, the courts should not examine whether another method might produce additional benefits. See Evans v. District No. 17, 841 F.2d 824, 831 (8th Cir. 1988). Noah's preschool teacher testified that he benefitted from the instruction provided by his previous IEPs. See R., Vol. V, Hearing Vol. 4 at 13-14. The CID evaluation stated that "Noah, his family and his teachers should be proud of the listening, language and speech skills he has developed." Id. at Vol. VI, Doc. 32. One of the Logues' own witnesses testified that Noah would achieve an educational benefit under the proposed IEP. See id. at Vol. V, Hearing Vol. 9 at 9.

The Logues also argue that the district court erred in refusing to admit testimony and affidavits which bolstered their claim that an oral communication classroom was the appropriate educational placement for Noah. The district court determined that this proffered evidence addressed only the question of the appropriate methodology to teach Noah. The Logues maintain that the evidence strengthened their position regarding the

inadequacy of the IEP offered by the District. We review a district court's decision regarding the admission of evidence under these circumstances for an abuse of discretion. See O'Toole, 1998 WL 251193, at *15. Our review of the record leads us to conclude that the evidence the Logues sought to admit would be cumulative because it would primarily bolster their contention that an oral communication classroom was the appropriate educational environment for Noah. Because a dispute concerning the best methodology for educating a hearing impaired child is "precisely the kind of issue which is properly resolved by local educators and experts," we hold that the district court did not abuse its discretion by refusing to admit this evidence. Id. at *15-*16.

Although we are sympathetic to parents' desires to have the state educate their children by the method they believe best-calculated to produce maximum benefits, this is not the standard required by Kansas statutes or the IDEA. See O'Toole, 1998 WL 251193, at *6-*7; see also Rowley, 458 U.S. at 197 & n.21; Johnson, 921 F.2d at 1029 ("the 'appropriate' education required by the Act is not one which is guaranteed to maximize the child's potential."); accord Doe, 879 F.2d at 1341; Lunceford v. District of Columbia Bd. of Educ., 745 F.2d 1577, 1583 (D.C. Cir. 1984). We conclude that the determination that the IDEA was not violated in this instance was correct. Therefore, we affirm the decision to grant summary judgment or judgment on the record in favor of the District. We also affirm the district court's decision to deny Plaintiffs' Motion for Relief

from Judgment and the court's denial of Plaintiffs' request to submit additional evidence.

AFFIRMED.

Entered for the Court


Monroe G. McKay
Circuit Judge