UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

VICTOR MORGAN and KIMBERLY
MORGAN, parents of and as next
friends of BRADLEY MORGAN, a
minor,

     *Plaintiffs-Appellants,*

     v.

GREENBRIER COUNTY WEST VIRGINIA
BOARD OF EDUCATION and STEPHEN
BALDWIN, as Superintendent of
Schools for Greenbrier County,

     *Defendants-Appellees.*

No. 02-1687

Appeal from the United States District Court
for the Southern District of West Virginia, at Beckley.
David A. Faber, Chief District Judge.
(CA-00-1211-5)

Argued: September 24, 2003

Decided: December 29, 2003

Before NIEMEYER, LUTTIG, and WILLIAMS, Circuit Judges.

---

Affirmed by unpublished per curiam opinion. Judge Williams wrote
a separate opinion concurring in part and dissenting in part.

---

## COUNSEL

**ARGUED:** Silas Mason Preston, PRESTON & WEESE, L.C.,
Lewisburg, West Virginia, for Appellants. Jan L. Fox, STEPTOE &
JOHNSON, P.L.L.C., Charleston, West Virginia, for Appellees.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Victor and Kimberly Morgan, on behalf of their minor child Bradley, who is dyslexic, commenced this action to review the decision of a West Virginia hearing officer rejecting in part their complaint about the Greenbrier County (West Virginia) Board of Education's compliance with the Individuals with Disabilities Education Act. The Morgans contended that because an Individualized Education Program ("IEP") developed in May 2000 for Bradley's 2000-2001 school year was inappropriate under the Act, they were entitled to have Bradley placed in an out-of-state private residential school and have the State reimburse them their annual costs of $27,800. While the hearing officer agreed that the IEP for Bradley was inappropriate, she directed the Morgans to follow an administrative process for developing a new IEP before any out-of-state placement would be considered. The hearing officer also concluded that the Morgans had failed to establish the need at that time for out-of-state placement and also the reasonableness of its cost.

The district court granted summary judgment for Greenbrier County, and, for the reasons that follow, we affirm.

I

During the 1999-2000 school year, Bradley was in the sixth grade at Greenbrier County (West Virginia) Elementary School. Because Bradley had previously been diagnosed as dyslexic, he received both special education and regular education part time.

On May 23, 2000, the Morgans and their son attended a meeting scheduled to develop Bradley's 2000-2001 IEP. The Morgans were dissatisfied with the IEP developed, and, based both on Bradley's past lack of educational progress as well as the process followed in devel-

oping the IEP, they requested a due process hearing to review the 2000-2001 IEP. At the same time, the Morgans unilaterally enrolled Bradley in a six-week summer course at the Oakland School in Virginia, a residential school that specializes in teaching dyslexic students.

The due process hearing was conducted before an impartial hearing officer on July 27 and 28, 2000, in Lewisburg, West Virginia, and on August 25, 2000, following the hearing, the hearing officer issued a lengthy written decision that included detailed findings of fact and conclusions of law. In her decision, the hearing officer agreed with the Morgans that the IEP developed for Bradley for the 2000-2001 school year was not appropriate in that it was not reasonably calculated to provide Bradley with educational benefit. While the hearing officer found "serious procedural deficiencies," she nonetheless concluded that these deficiencies did not cause Bradley to lose "educational opportunity." The officer noted that because the Morgans "elected to file a due process [hearing request] immediately, no IEP committee meeting could be reconvened as [had been] offered by the County." To remedy this short-circuiting of the process, the hearing officer directed that the IEP committee meet as soon as possible, but in any case within 15 days of its order, to prepare an appropriate IEP for Bradley's 2000-2001 school year. Moreover, the hearing officer detailed the process that had to be followed. The hearing officer concluded that only if the IEP committee concluded that Greenbrier County schools could not, based on evaluations, provide Bradley with an educational benefit in Greenbrier County, should the IEP committee consider residential placement as requested by the Morgans.

With respect to the Morgans' request that Bradley be placed forthwith at an out-of-state residential school, the officer concluded that such a placement was not justified, and to order such a placement without pursuing a revised IEP would ignore the Act's requirement that, "to the greatest extent possible, children are to be educated in the least restrictive environment." *See* 20 U.S.C. § 1412(a)(5)(A). In addition, the hearing officer pointed out that the Morgans failed to provide any evidence "as to the reasonableness of the costs (approximately $25,000 per year) of the parents' proposed placement."

Similarly, with respect to the Morgans' request for unilateral placement of Bradley at the Oakland School summer program, the officer

concluded that the Morgans had not presented sufficient evidence for such a placement and for the reasonableness of its costs.

Finally the hearing officer rejected Bradley's claim for "compensatory education." Noting that compensatory education is a remedy "occasionally used when the County schools knew or should have known that the student's IEP was inappropriate and when the student was not receiving more than *de minimis* educational benefit or when the County schools acted in bad faith," the hearing officer found that those circumstances had not been demonstrated in this case. The officer stated that the County's conduct amounting to procedural deficiencies did not "appear to be an act of deliberate indifference towards the parents' IDEA rights."

The Morgans commenced this action under the IDEA, 20 U.S.C. § 415(i)(2)(A), to review the hearing officer's decision (1) to refuse to approve the placement of Bradley at the Oakland School for the 2000 summer session, the 2000-2001 school year, and such years thereafter as necessary, and (2) to deny Bradley's claim for reimbursement for expenses incurred in sending Bradley to the Oakland School. On the motion of Greenbrier County, the district court granted summary judgment to the County, essentially agreeing with the hearing officer on the issues raised. From the district court's judgment, this appeal followed.

II

Under the Individuals with Disabilities Education Act ("IDEA"), State eligibility for federal funding requires the State to insure that a free appropriate public education is available to all disabled children between ages 3 and 21 residing in the State. 20 U.S.C. § 1412(a)(1)(A). To provide a free appropriate public education to a disabled student, a local educational agency must develop an appropriate "Individualized Education Program" ("IEP") tailored to the individual student. *Id.* §§ 1412(a)(4), 1414(d); *Bd. of Educ. of Hendrick Hudson Central Sch. Dist. v. Rowley*, 458 U.S. 176, 181-82 (1982). The IDEA provides parents the opportunity to participate in the development of the IEP, 20 U.S.C. §§ 1414(d)(1)(B), (d)(3), and provides them procedural safeguards, *id.* § 1415.

The required procedural safeguards include the opportunity for parents to present complaints with respect to the State's provision of a free appropriate public education or to the identification, evaluation, or educational placement of their disabled child. 20 U.S.C. § 1415(b)(6). Parents may pursue their complaint further by requesting an "impartial due process hearing," which, in West Virginia, is conducted by the State educational agency. *Id.* § 1415(f)-(g); W. Va. Code St. R. § 126-16-8.1.11. "Any party aggrieved by the findings and decision" made by the State educational agency is given the right "to bring a civil action with respect to the complaint presented" to the agency. *Id.* § 1415(i)(2)(A). In the judicial proceeding, the administrative findings of fact are considered "*prima facie* correct, and if a review court fails to adhere to them, it is obliged to explain why." *MM ex rel. DM v. Sch. Dist. of Greenville County*, 303 F.3d 523, 530-31 (4th Cir. 2002). Stated differently, "the deference due the decision of the underlying State administrative process requires that the party challenging the administrative decision bear the burden of proof" before the district court. *Tice v. Botetourt County School Board*, 908 F.2d 1200, 1206 n.5 (4th Cir. 1990) (citing *Spielberg v. Henrico County Public Schools*, 853 F.2d 256, 258 n.2 (4th Cir. 1988)).

In this case, the hearing officer concluded that Bradley's 2000-2001 IEP, developed for Bradley on May 23, 2000, was not appropriate, and she directed the IEP committee to meet within 15 days to prepare an appropriate one. She also specified the procedures that had to be followed in the renewed effort. The hearing officer concluded that only if the IEP committee concluded, after pursuing the specified procedures, that Bradley would not receive educational benefit within county schools could the IEP committee consider an out-of-state placement, as the Morgans requested. The Morgans have advanced no reason why this ruling was not appropriate and why they should not have completed the specified administrative process before commencing this action. Indeed, they were essentially vindicated in their claim that the original IEP was inappropriate and that a new one should be developed. Accordingly, we find no error by the district court's affirmance of this ruling.

With respect to the Morgans' claims that Bradley should be placed at an out-of-state residential school and that the State should reimburse the Morgans for the cost, we agree with the district court and

the hearing officer that the Morgans have essentially jumped the gun. They have failed to demonstrate why only an out-of-state placement was appropriate and why they should not be required to proceed with the process ordered by the hearing officer. In addition, the Morgans presented no evidence sufficient to justify their placement of Bradley at an out-of-state residential school for the summer of 2000. Extended school year services are not necessary to a free appropriate public education under the IDEA unless "the benefits a disabled child gains during a regular school year will be significantly jeopardized if he is not provided with an educational program during the summer months." *MM ex rel. DM*, 303 F.3d at 537-38. And with respect to both the summer placement and the proposed permanent placement at the Oakland School, the Morgans failed to present any evidence to justify the reasonableness of the costs. Finding no error below, we affirm.

We must note, however, that our judgment is a narrow one, ruling only on the limited issues placed before us by the Morgans' complaint. We do not have before us the issue of the appropriateness of any IEP that was developed or any actions taken after the due process hearing. Thus, we do not rule on whether, in the appropriate circumstances, the Morgans might not still be entitled to some reimbursement or other relief.

For the reasons given, the judgment of the district court is

*AFFIRMED*.

WILLIAMS, Circuit Judge, concurring in part and dissenting in part:

Although I agree with my colleagues that VM[1] has "essentially jumped the gun" by failing to attend the second IEP meeting ordered by the hearing officer, I write separately to explain why I believe that VM must follow the process ordered by the hearing officer.[2] I also

---

[1]In order to protect the privacy of the minor child and his family, I refer to the child as BM and the parents collectively as VM.

[2]The majority styles its opinion as an affirmance of the district court's grant of summary judgment, but, when a plaintiff fails to exhaust admin-

write to state my disagreement with the majority's treatment of the district court's decision regarding VM's claim for compensatory education. Additionally, because VM is likely to pursue reimbursement for placing BM at the Oakland School in the future, I take this opportunity to note the proper legal standards under the IDEA to be considered when determining if a proposed parental placement is appropriate.

The IDEA requires that parties exhaust their administrative remedies before filing suit. 20 U.S.C.A. § 1415(i)(2) (West 2000). At oral argument, VM nonetheless argued that exhaustion should not be required here because the objections made to the first IEP will likely be repeated during any future IEP meeting. In a similar situation, the Tenth Circuit explained that "nothing in the IDEA . . . states that a plaintiff need not exhaust administrative remedies if his objection to a second IEP is the same as his objection to his first IEP." *Urban v. Jefferson County Sch. Dist. R-1*, 89 F.3d 720, 725 (10th Cir. 1996). Likewise, even assuming VM's objections to BM's second IEP would have been the same as the objections to the first — *i.e.*, the IEP would not recommend placement in the Oakland School — an exhaustion of remedies is still required.[3]

Because a child's education is something near the heart of all parents, a parent aggrieved by an adverse ruling in this context might

istrative remedies, the typical disposition is a dismissal of the action for lack of subject matter jurisdiction. *See MM ex rel. DM v. School Dist. of Greenville County*, 303 F.3d 523, 536 (4th Cir. 2002). Because summary judgment is a ruling on the merits, affirming the district court's grant of summary judgment in this case may bar VM from relitigating his reimbursement claim in a later action. *See generally Grausz v. Englander*, 321 F.3d 467, 472 (4th Cir. 2003) (explaining that res judicata requires a prior final decision on the merits). I believe the appropriate action, consistent with the majority's approach, is to dismiss this action for lack of subject matter jurisdiction

[3]Although it may seem inequitable to require a second IEP meeting where a plaintiff argues that second meeting was ordered solely because of the legal errors made by the hearing officer when determining if the parental placement was proper, the IDEA does not provide an exception to the exhaustion requirement for this circumstance.

find it difficult to understand the application of a rigid exhaustion requirement when the result is a possible loss of further educational opportunity. The IDEA, however, provides a panoply of procedural safeguards and administrative remedies based on Congress' belief that courts should not "substitute their own notions of sound educational policy for those of the school authorities which they review." *Bd. of Educ. v. Rowley*, 458 U.S. 176, 206 (1983). Given this Congressional intent, it would be improper to second-guess the school district's decisions before they are made. If this system seems burdensome, the remedy lies in Congress, not the courts. Because VM "jumped the gun," the administrative process was unable to run its course in this case. I agree with the majority that VM should convene a second IEP meeting with the school district, create a second IEP, and then, if the concerns are not resolved, institute a civil action after that IEP is reviewed at a due process hearing.

As for VM's compensatory education claim, VM has exhausted administrative remedies. I thus dissent from my colleague's failure to address the district court's disposition of this claim. Compensatory education is "educational services ordered by the court to be provided prospectively to compensate for a past deficient program." *G ex rel. RG v. Fort Bragg Dependent Schs.*, 343 F.3d 295, 308 (4th Cir. 2003). The hearing officer, in her final order, clearly stated that an award of compensatory education was improper and, as shown by the fact that the district court addressed the claim, VM's complaint sufficiently stated a request for compensatory education. Accordingly, VM properly instituted a civil action on that claim. *See* 20 U.S.C.A. 1415(i)(2) (West 2000); *Urban*, 89 F.3d at 725 (reviewing a claim for compensatory services, after holding that other IDEA claims had not been exhausted).

The district court granted summary judgment on that claim, stating that "case law does not address the type of prospective relief being sought in this case." (J.A. at 586.) Unfortunately, the district court did not have the benefit of our opinion in *G v. Fort Bragg*, 343 F.3d at 309, at the time it issued its order. In *G v. Fort Bragg*, we held, in accord with our sister circuits, that "the IDEA permits an award of [compensatory education] in some circumstances." *Id.* Because the district court believed that claims for compensatory education were not cognizable under the IDEA, the district court did not examine the

merits of the claim, and I likewise refrain from doing so. I only note that, because the hearing officer issued a final order categorically denying compensatory education, VM properly exhausted the administrative remedies with respect to that claim. I would thus reverse the district court's grant of summary judgment on this claim and remand the claim for further proceedings in light of *G v. Fort Bragg.*

Finally, because VM is likely to pursue reimbursement for private educational expenses in the future, and the majority opinion does not foreclose such a possibility, I want to address two areas where the legal standards to be applied in these circumstances differ from those typically employed under the IDEA.[4] Reimbursement of private education expenses under IDEA is appropriate when the reviewing court finds that: (1) the public school's placement was not providing the child with a free appropriate public education; and (2) the parents' alternative placement was proper under IDEA. *Sch. Comm. v. Dep't of Educ.*, 471 U.S. 359, 369-70 (1985).

Congress passed the IDEA in order to give disabled and handicapped children access to public schools. *See Sch. Comm.*, 471 U.S. at 373. In *Carter v. Florence County Sch. Dist. Four*, 950 F.2d 156, 163 (4th Cir. 1991), *aff'd on other grounds*, 510 U.S. 7 (1993), however, we held that, despite the congressional intent to give disabled children the ability to attend public school, the standard for determining the appropriateness of a parental placement in a private school is not overly stringent. We explained "when a public school system has defaulted on its obligations under the Act, a private school placement is 'proper under the Act' if the education provided by the private school is 'reasonably calculated to enable the child to receive educa-

---

[4]Specifically, at the due process hearing, the hearing officer cited to an unpublished disposition dealing with residential care outside of school, *Board of Educ. v. Brett Y ex rel. Mark Y*, 1998 WL 390553, 155 F.3d 557 (4th Cir. 1998), for the proposition that reimbursement was proper only where the "educational benefits which can be provided through residential care are essential for that child to make any progress at all." (J.A. at 543.) The hearing officer also believed that the least restrictive environment test, 20 U.S.C.A. § 1412(5)(A) (West 2000), strictly applied to parental placements. (J.A. at 544.)

tional benefits,'" *Carter*, 950 F.2d at 163 (quoting *Rowley*, 458 U.S. at 207), a standard not applied by the hearing officer.[5]

Additionally, in *Carter*, we expressed strong doubt as to whether the least restrictive environment requirement of the IDEA, 20 U.S.C.A. § 1412(5)(A) (West 2000), applies to parental placements. *Carter*, 950 F.2d at 160. We noted "the school district has presented no evidence that the policy was meant to restrict *parental* options." *Id.* (emphasis in original). Moreover, other circuits addressing the issue have held that the least restrictive environment requirement does not apply with the same force to parental placements as it does to placements advocated by school districts. *See M.S. ex rel. S.S. v. Bd. of Educ.*, 231 F.3d 96, 105 (2d Cir. 2000) (stating that mainstreaming "remains a consideration" but noting that parents "may not be subject to the same mainstreaming requirements"); *Cleveland Heights-University Heights Sch. Dist. v. Boss*, 144 F.3d 391, 399-400 (6th Cir. 1998) (failure to meet mainstreaming requirements does not bar reimbursement). As we have explained, "the Act's preference for mainstreaming was aimed at preventing *schools* from segregating handicapped students from the general student body." *Carter*, 950 F.2d at 160 (emphasis in original). Although we have not definitively resolved the proper role of the mainstreaming requirement when considering parental placements, contrary to the hearing officer's approach,[6] it is clear that requirement should not be applied in the strictest sense.

In sum, I concur in my colleague's analysis of the reimbursement claim, but I would have clarified that the appropriate disposition of the claim is a dismissal for lack of subject matter jurisdiction.

---

[5]Instead, the hearing officer applied the standard applicable when determining whether services beyond the regular school day are appropriate under the IDEA. (J.A. at 543) (citing *Board of Educ. v. Brett Y ex rel. Mark Y*, 1998 WL 390553, 155 F.3d 557 (4th Cir. 1998) (unpublished) (holding reimbursement of extended school year services proper where "educational benefits which can be provided through residential care are essential for that child to make any progress at all").

[6]The due process hearing officer strictly applied the least restrictive environment test when reviewing VM's request for reimbursement during the hearing. (J.A. at 544.)

Because VM did exhaust the administrative remedies with regard to the claim for compensatory education, I would reverse the district court's grant of summary judgment on that claim and remand for further proceedings.